UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

JJ Holand Limited,

        Plaintiff,

vs.

Fredrikson & Byron, P.A.,
Dean R. Karau, and David C. West,

        Defendants.

Civil No. _____

**EXHIBIT H**
Plaintiff's Complaint

---

Dahmen, Melissa L.
_____

From:       Karau, Dean
Sent:       Wednesday, May 26, 2004 7:48 AM
To:         'JONATHAN CORNTHWAITE'
Subject:    RE: JJ Holand: Potomac

Hello Jonathan,

We will follow your instructions and perform no analysis on the possible alternative strategies until such time as we receive clear instructions to do so. I agree that a conference call (audio or audio/video) is in order. My calendar is generally open over the next few days.

With respect to the client's comments, I respond as follows.

The client is correct in that the petition is based solely upon the allegation that the client falsely told the USPTO that it used its mark when it had not.

The Statement of Use prepared by F&B is appropriate in all respects. Rather, the petitioner is challenging whether the client in fact ever used the mark as it averred in the Statement of Use. If the client used the mark as it averred, then the client should prevail. As I have discussed at length previously, the client's first had to have been a legitimate use, not merely token use intended solely for purposes of obtaining the registration.

The client did not need to have used the mark on all of the products in its application in order to obtain a registration. Rather, the client only needed to aver to use of the mark in connection with one of the goods. In this case, the client provided a specimen showing use on cigarettes. (Although not particularly relevant to this proceeding, the client could be vulnerable to "partial" cancellation by an entity attempting to use a similar mark for one of the goods listed in the client's application but for which the client has not used its mark. We can discuss this nuance further in a conference call.)

Thus, the fact that the client has not used the mark on all of those products is not an issue. Rather, the issue is whether the client used the mark on the products that the petitioner is concerned about in its applications, i.e., tobacco, cigarettes, cigars and matches. Practically speaking, I would think that truly at issue are the cigarettes.

Therefore, the client will eventually need to offer all evidence it has of how it has used the mark, beginning on May 29, 2003, the date of first use to which it averred in its Statement of Use, including all evidence relating to the "considerable sums" the client has expended in its use of the mark.

It is incorrect to suggest that the petitioner sent the petition to the client's registered address instead of to F&B. Rather, under TTAB rules, the petitioner sends its petition to the TTAB, which processes it, develops a schedule and then sends it to the registrant at the address shown in the registration and the USPTO's database. The petitioner does not control where the petition is sent. If the address in the registration is wrong, then it is the registrant's issue, not the petitioner's issue. If the internal communication of the registrant is faulty, it again is the registrant's issue, not the petitioner's issue.

The explanation for the internal mail problem does not need to be extremely detailed but nevertheless I will need more information. The client is correct that the petitioner will not suffer any prejudice. As long as the client made proper use of the mark on at least one of its goods in the application (preferably cigarettes since that is what is really at issue), then it has a meritorious defense.

For purposes of preparing and filing a motion to permit a late answer, I need the explanation for the internal mail problem. For purposes of preparing an answer, I believe that I have everything that I need; basically we will simply deny all of the salient allegations.

1

The client cannot recover fees in a TTAB proceeding. However, if the client elects to follow an aggressive strategy of commencing a trademark infringement lawsuit, it can ask a U.S. court for an award of attorneys' fees. The client needs to know, however, that awards of attorneys' fees occur only in very egregious circumstances where the infringement can be proven to be particularly willful.

We need to file the motion and the answer as soon as possible so that we can represent to the TTAB that we acted with due diligence once we learned about the petition. Thus, I look forward to receiving the additional explanation from the client.

I look forward to receiving authorization to begin preparing the motion papers and the answer while awaiting the additional information from the client.

Best regards,

Dean

Dean Karau, Esq.
Fredrikson & Byron, P.A.
4000 Pillsbury Center
200 South Sixth Street
Minneapolis, MN  55402-1425
Direct Dial: 612.492.7178
Main Phone: 612.492.7000
Fax: 612.492.7077

27 - 2002

This is a transmission from the law firm of Fredrikson & Byron, P.A. and may contain information which is privileged, confidential, and protected by the attorney-client or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately at our telephone number (612) 492-7000.

-----Original Message-----
From: JONATHAN CORNTHWAITE [mailto:jcornthwaite@wedlakebell.com]
Sent: Wednesday, May 26, 2004 4:27 AM
To: Karau, Dean
Subject: Re: JJ Holand: Potomac

Dean,

many thanks for your email of yesterday. I am seeking the client's instructions on it, and have suggested that it may be helpful to them to have a further telephone conference call (or a video-conference) to discuss strategy and tactics. In the meantime, please do not commence the further analysis that you mention until I have recieved instructions from the client on the point..

I have now received the client's initial comments on Potomac's petition, which I quote below:

QUOTE

"The Petition from Potomac to cancel JJH's registration for YES! appears to be based solely on the nature of the Statement of Use filed and accepted by the USPTO.

This document was prepared by F&B and we assume it followed the standard procedure for such cases. Although, at the date of signing, JJH had only used the mark for cigarettes, it intended to use it for other items in Class 34 in due course. However, had it checked the lower box, this would have effectively deleted such other goods from the application and trade mark protection for these items would have been lost.

2

In endorsing the prepared Statement of Use and providing a sample pack, JJH was merely seeking the maturity of its registration and did not intend to imply that it had used the mark in connection with ALL the items mentioned in the Notice of Allowance.  We have no doubt that this is common practice in relation to Class 34, since few trade mark applicants are likely to produce all the items specified therein, before seeking maturity of their registrations.

JJH rejects the Petitioner's suggestion that it has acted falsely or that it has committed fraud to induce the USPTO to grant its registration and considers the Petition to be vexatious and frivolous.

JJH has expended considerable sums to register this mark, develop and launch its product, and ensure its compliance with US regulations.  It has been severely hampered in these efforts by the Petitioner's use of an almost identical mark, which has made potential customers reluctant to accept JJH's product.  Therefore, it has been obliged to engage US attorneys to defend its intellectual property against the Petitioner's actions.

>From correspondence it had received from F&B, the Petitioner was well aware of their involvement, yet chose not to advise F&B of its impending action, despite having been asked to forward all relevant documentation to David West.  Instead, the petition was sent only to JJH's registered address in the BVI.

Regrettably, it was not received by Mercator [ie JJH's trust company] in Guernsey until 20 May (as evidenced by their date stamp on the documentation) and did not reach us until 25 May.  We are endeavouring to establish the reason for this delay in the BVI, but it is certainly not the result of wilful conduct or neglect on our part.  Further, the Petitioner will not be prejudiced by the late submission of our response.

I assume you and F&B will agree that we have a meritorious defence to this Petition and that the USPTO will be persuaded to dismiss it.

Please let us know if you need further information at this stage, although we believe that F&B will have all pertinent information in their files to enable them to submit their Answer.

Finally, please advise whether we can seek financial redress from Potomac if the Petition is dismissed."

UNQUOTE

I have asked the client to let me know as soon as they establish the reason for the delay in the BVI.  I have also asked them to let me know whether, since the date of signature of the Statement of Use, they have commenced using the mark on any of the other goods listed in the specification, though I don't know whether this will be strictly relevant to the petition.

I shall look forward to hearing from you on the above and, in particular, on whether JJH has a defence to the petition notwithstanding the fact that (at the time of the signature of the Statement of Use) its use of the mark was confined to cigarettes.

Kind regards,

Jonathan

3