# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

JJ Holand Limited,

                  Plaintiff,                        **MEMORANDUM OPINION
AND ORDER**

      v.                                    Civil No. 12-3064 ADM/TNL

Fredrikson & Byron, P.A.,
Dean R. Karau, and David C. West,

                  Defendants.

---

Patrick H. O'Neill, Jr., Esq., and Allison Vetter, Esq., O'Neill & Murphy, LLP, Saint Paul, MN, on behalf of Plaintiff.

David R. Marshall, Esq., Leah C. Janus, Esq., and Jessica L. Edwards, Esq., Fredrikson & Byron, P.A., Minneapolis, MN, on behalf of Defendants.

---

# I.  INTRODUCTION

On April 12, 2013, the undersigned United States District Judge heard oral argument on Defendants Dean R. Karau, David C. West, and Fredrikson & Byron, P.A.'s Motion to Dismiss [Docket No. 25] Plaintiff's Amended Complaint.  For the reasons stated below, Defendants' motion is denied.

# II.  BACKGROUND[1]

In 2000, Plaintiff JJ Holand Limited ("JJH") retained the law firm Fredrikson & Byron ("Fredrikson") to help it establish the trademark "YES!" (or, the "Trademark") for tobacco and tobacco related products.  Am. Compl. [Docket No. 20] ¶¶ 8, 9.  JJH is an international corporation, with a principal place of business in Bangkok, Thailand.  Id. at ¶ 1.  On February 3,

---

[1]  As discussed below, the facts discussed in this section are derived from the Complaint, the allegations of which are taken as true.

2000, Fredrikson sent JJH a draft Intent-to-Use Trademark Application (the "Application").

Am. Compl. ¶ 10; Ex. A.[2]  On February 22, 2000, Fredrikson filed JJH's signed Application with

the United States Patent and Trademark Office ("PTO").  Ex. B.[3]  The Application attested to

JJH's "bona fide intention to use the mark ["YES!"] . . . in commerce for tobacco," and twenty-

one other tobacco-related products, including cigars, matches, and snuff boxes.  Id.

On May 9, 2001, Fredrikson informed JJH that a United States trademark application will

be approved when an applicant submits proof that the mark is being used:

> . . . [I]n the ordinary course of trade in connection with the goods stated in the
> application, rather than merely in attempt to reserve the right to a mark.  Thus, for
> [JJH]'s purposes, it must have verifiable sales of its tobacco products to its U.S.
> customers.

Ex. C.  Fredrikson further advised JJH that once the use of the Trademark in commerce had

begun, Fredrikson would need to provide the PTO with the date of first use along with a

---

[2] All exhibits referenced herein were filed in conjunction with the Amended Complaint, but were assigned a separate docket entry number [Docket No. 24].

[3] As described by the PTO, http://www.uspto.gov/trademarks/process/index.jsp, the application process is lengthy.  The PTO reviews the application and does a preliminary search for possibly conflicting marks.  After the initial examination by the PTO, the mark is published and any party who believes it may be damaged by registration of the mark has thirty days from the publication date to file an opposition.  If there is no opposition and the mark has been published based upon the applicant's bona fide intention to use the mark in commerce, then the PTO will issue a notice of allowance.  A notice of allowance is only a written notification that the mark has survived the opposition period; it is not equivalent to a registration.  The applicant has six months from the date of the notice of allowance to use the mark in commerce and submit a statement of use.  An applicant cannot withdraw a statement of use; however, the applicant may file one extension request with the statement of use to provide more time to overcome deficiencies in the statement of use.  No further extension requests may be filed.  The statement of use is reviewed by the PTO, and if it determines there are no deficiencies, then a mark is registered.  Only then does the mark become fully protected under United States law.  To keep the registration "live," the registrant must file specific maintenance documents.  Failure at any step along the way may result in an "abandonment" determination and in loss of trademark rights.

specimen from the products which showed the use of the mark.  Id.  JJH, communicating through

a lawyer at Wedlake Bell, LLP ("Wedlake"), asked if shipping "one case containing 10,000

cigarettes to the USA for sale to U.S. customers" was sufficient to satisfy the requirement that

the mark be used in the ordinary course of trade in connection with the goods stated in the

application.  Ex. D.  JJH also asked, "is a larger volume of goods necessary for the sale to be in

the ordinary course of trade?"  Id.  On May 12, 2001, Fredrikson responded that shipping one

case of cigarettes would not commence "use," but rather use would commence when a U.S.

customer purchased a packet of cigarettes from the case.  Id.  Fredrikson advised that the volume

was "satisfactory," but alerted JJH to "please note that this should not be just one singular

shipment but rather the beginning of continuous shipments of the goods which depict" the

"YES!" trademark.  Id.

    JJH alleges the May 2001 letter is Fredrikson's legal advice that the single shipment was

sufficient to comply with the law, and thus, completed the application for trademark protection.

Am. Compl. ¶ 15.  In the meantime, from May 2001 to June 2002, JJH continued the process of

product development so that it could make use of its trademark.  Id. at ¶ 16.

    On June 21, 2002, communicating again through a lawyer at Wedlake, Fredrikson

informed JJH that Potomac Tobacco Company ("Potomac") had filed a trademark application for

"YES".  Fredrikson also informed JJH that the PTO had suspended review of that application

pending JJH's application.  Ex. E.  Defendant David West, a Fredrikson attorney, advised that

once JJH "has begun using the mark in the US, . . . we proceed with filling the associated

documentation as soon as possible so as to foreclose the possibility of Potomac interfering with

the registration" of JJH's mark.  Id.  West continued, "In that regard, we will want to make sure

3

that we have proper evidence of JJH's use of the YES mark in the US so that Potomac cannot later attack the registration on the basis of use." Id.  JJH alleges this email was Fredrikson's assumption of responsibility, that Fredrikson would make sure JJH had proper evidence of JJH's use of the mark and presumably would warn JJH if more needed to be done to assert "use."  Am. Compl. ¶ 18.  In reliance on their understanding of Fredrikson's advice, JJH signed its Statement of Use on July 21, 2003, and Fredrikson filed it on August 14, 2003.  Id. at ¶ 23; Ex. F.  On February 10, 2004, JJH's "YES!" application matured into Registration No. 2,813,328.  Ex. G at ¶ 5.

On March 19, 2004, Potomac filed a Petition to Cancel JJH's registration of the "YES!" trademark with the Trademark Trials and Appeals Board ("TTAB") on the basis of fraud.  See Ex. G.  Potomac alleged JJH had falsely attested to the use of its mark and that JJH had not used its trademark in commerce in relationship to all of the tobacco related products listed on its Application and Statement of Use.  Id.

Defendant Dean Karau, another Fredrikson attorney, was assigned to lead the litigation defense against the Petition to Cancel.  Am. Compl. ¶ 26.  In a May 26, 2004 e-mail, Karau defended Fredrikson's work:

> The Statement of Use prepared by [Fredrikson] is appropriate in all respects.  Rather, the petitioner is challenging whether the client in fact ever used the mark as it averred in the Statement of Use.  If the client used the mark as it averred, then the client should prevail.  As I have discussed at length previously, the client's first [sic] had to have been a legitimate use, not merely token use intended solely for purposes of obtaining registration.

Ex. H.  Karau continued to explain that the "issue is whether [JJH] used the mark on the products that [Potomac] is concerned about in its applications, i.e., tobacco, cigarettes, cigars and [unreadable item]."  Id.  JJH alleges Karau was advising in this email that the Statement of Use

was "appropriate in all respects" and that JJH "only needed to aver to the use of the mark in connection with one of the goods" as opposed to all of the other tobacco related goods listed in the Application.  Am. Compl. ¶ 27.  On June 1, 2004, Karau filed an Answer to Potomac's Petition.  Id. at ¶ 28.  In essence, JJH felt assured that its Trademark was protected without the need to use the Trademark on all the related goods.

What JJH did not know at the time, and did not find out until 2010, was that Fredrikson had conducted further research.  Ex. N.  In a June 9, 2004 memo, a researcher for Fredrikson informed Karau:

> There are approximately the same number of cases falling on both sides of the issue.  Most concerning, however, is that the most recent decisions do not support our position [to defend the Statement of Use].  Three cases in the first six months of this year oppose our client's position.  Only one decision in the last decade supports our client's position.

Id. at 1.  This summary was followed by a list of cases and corresponding case summaries relevant to cancellation precedent.

On October 22, 2004, Fredrikson and JJH had a conference call wherein JJH avers Fredrikson changed its legal opinion—without revealing its research—and now advised JJH that its Trademark would likely be cancelled.  Am. Compl. at ¶ 29.  Fredrikson notified JJH that the Statement of Use should have excepted every item listed in its application not then in use—every good but cigarettes—because cigarettes was the only item JJH had sold in the United States.  Id. at ¶ 30.  Over the next six months, the parties exchanged a series of communications.  See id. at ¶¶ 29-37.  In general, Fredrikson denied any wrong-doing, but it acknowledged possible "assumptions" that led to miscommunication and offered several damage mitigating solutions in preparation for the likely cancellation of the Trademark.  That said, as late as March 15, 2005,

Fredrikson was claiming that it was "vigorously defending [JJH's] rights in its U.S. trademark registration," which JJH understood to mean that the Trademark was still protectable.  Id. at ¶ 37; Ex. K.

On May 31, 2005, Fredrikson notified JJH it had drafted a motion to withdraw as counsel.  Ex. L.  Fredrikson believed the parties had "an irreconcilable difference as to whether it is appropriate to continue" defending against the Petition to Cancel.  Id.  On August 23, 2005 Fredrikson proposed that if JJH released Fredrikson from any and all claims it may have against it, then in exchange Fredrikson would waive any unpaid fees, would pay JJH a sum of money, and would attempt to secure a settlement with Potomac.  Am. Compl. ¶ 39.  On September 16, 2005, to prevent Fredrikson's filing of the motion to withdraw, JJH elected to terminate Fredrikson's representation.  Id. at ¶ 40.

On November 9, 2005, JJH secured alternate counsel for the Potomac litigation.  Id. at ¶ 44.  JJH requested Fredrikson send its file to the alternate counsel, including all relevant research on the trademark cancellation issue.  Id. at ¶ 48.  JJH avers Fredrikson attempted to conceal its mishandling of the case by sending JJH's alternate counsel only a portion of the file, while representing it was sending the entire file.  Fredrikson withheld some documents, including the June 9, 2004 memorandum.  Id. at ¶¶ 62, 68, 76.  Upon review of the material Fredrikson sent, alternate counsel advised JJH that it would not likely prevail in the cancellation proceeding with Potomac.  Id.  It is unclear what independent research alternate counsel conducted once the case was transferred, but JJH alleges that if Fredrikson had sent its entire file, alternate counsel would have discovered that Fredrikson was hiding a possible defense of their Statement of Use.

Unaware of its possible defense, JJH decided not to continue prosecuting its case and on

6

December 14, 2006, a default judgment was entered cancelling JJH's registration of "YES!".  Id. at ¶ 49; Ex. M.

Although it is unclear from the Amended Complaint what precipitated the further transfer of case materials, on October 18, 2010, Fredrikson provided JJH some documents it had withheld, one of which was the June 9, 2004 memo.  Id. at ¶ 50; Ex. N.  JJH argues that this memo would have suggested alternative options for defending the cancellation case other than default.  Am. Compl. at ¶¶ 63, 69, 74, 86.

JJH sued Fredrikson on December 7, 2012.  See Compl. [Docket No. 1].  JJH alleges that Fredrikson's actions during and after the "YES!" trademark application constitute legal malpractice.  In addition, JJH alleges Fredrikson's actions give rise to claims of breach of contract, breach of fiduciary duty, negligent misrepresentation, and intentional misrepresentation.  Anticipating possible statute of limitations issues, JJH alleges fraudulent concealment tolls the applicable statute of limitations rules.  In response, Fredrikson moves to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Rules") arguing that on its face the Amended Complaint is barred by the applicable statutes of limitations.[4]  The statute of limitations is Fredrikson's only ground for dismissal on all claims except for JJH's intentional misrepresentations claim.  Fredrikson argues JJH has not sufficiently alleged: (1) that JJH acted in reliance on any misrepresentations made by Fredrikson, (2) that it was damaged as a result of Fredrikson's alleged misrepresentations, or (3) fraud with particularity.

## III.  DISCUSSION

---

[4] Fredrikson has not filed an Answer to the Complaint.

7

**A.  Standard of Review**

Rule 12 provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true.  Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994); Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993).  Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party.  Ossman, 825 F. Supp. at 880.  And, although the court may not consider matters outside the pleading at this stage, "documents necessarily embraced by the complaint are not matters outside the pleading."  Ashanti v. City of Golden Valley, 666 F.3d 1148, 1151 (8th Cir. 2012) (quotation omitted).

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings "shall contain a short and plain statement of the claim showing that the pleader is entitled to relief."  A pleading must allege "enough facts to state a claim to relief that is plausible on its face," raising "a right to relief above the speculative level" and pushing claims "across the line from conceivable to plausible."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In other words, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**B.  Statute of Limitations and Motion to Dismiss**

In general, when responding to a complaint, a defendant must affirmatively state its statute of limitations defense, otherwise it will be waived.  Fed. R. Civ. P. 8(c)(1); see John R.

Sand & Gravel Co. v. United States, 552 U.S. 130, 133 (2008).  A court may consider a statute

of limitations argument at the motion to dismiss stage only if it appears from the face of the

complaint that the limitations period has run and the complaint contains no facts to toll that

running.  Varner v. Peterson Farms, 371 F.3d 1011, 1016 (8th Cir. 2004); see also Joyce v.

Teasdale, 635 F.3d 364, 367 (8th Cir. 2011) ("As a general rule, the possible existence of a

statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the

complaint itself establishes the defense.").

## C.  Fraudulent Concealment

Minnesota law allows equitable tolling of a statute of limitations when the plaintiff can

"demonstrate that the defendant engaged in fraudulent concealment" of material facts which

would lead to the discovery of the plaintiff's cause of action.  Lamere v. St. Jude Med., Inc., 827

N.W.2d 782, 788 (Minn. Ct. App. 2013) (citing De Cosse v. Armstrong Cork Co., 319 N.W.2d

45, 51-52 (Minn. 1982)).  Fraudulent concealment is a somewhat amorphous doctrine within

equitable tolling jurisprudence.  See Wild v. Rarig, 302 Minn. 419, 450 (1975) ("There is no

categorical definition of what constitutes fraudulent concealment."); see also Abbotts v.

Campbell, 551 F.3d 802, 805 (8th Cir. 2008) (holding Minnesota applies the discovery rule to

allegations of fraud; and, fraudulent concealment of information material to a non-fraud claim

will toll a limitations period).  But, when parties are in a fiduciary or confidential relationship,

fraudulent concealment is established if a defendant denies having, or withholds, material facts

that "lead the potential plaintiff to believe that the facts do not exist or cannot be discovered."

Helleloid v. Indep. Sch. Dist. No. 361, 149 F. Supp. 2d 863, 869 (D. Minn. 2001) (internal

quotation marks omitted) (citing <u>Goellner v. Butler</u>, 836 F.2d 426, 431 (8th Cir. 1988)).[5]  If

established, fraudulent concealment then tolls the running of the statute of limitations until

"discovery or reasonable opportunity for discovery of the [existence of a cause of action] by the

exercise of ordinary diligence."  <u>Id.</u>; <u>see also</u> <u>Hydra-Mac, Inc. v. Onan Corp.</u>, 450 N.W.2d 913,

918 (Minn. 1990).

      Because fraudulent concealment invokes fraud, the heightened pleading requirements of

Rule 9 apply.  Fed. R. Civ. P. 9(b); <u>Great Plains Trust Co. v. Union Pac. R.R. Co.</u>, 492 F.3d 986,

995 (8th Cir. 2007); <u>see</u> <u>De Cosse</u>, 319 N.W.2d at 51 (Minn. 1982) ("It is important not to lose

sight of the fact that [plaintiff] retains the burden of establishing the elements of fraudulent

concealment.").  But, once the plaintiff has pled sufficient material facts, fraudulent concealment

and due diligence are "normally . . . questions of fact."  <u>Veldhuizen v. A.O. Smith Corp.</u>, 839 F.

Supp. 669, 674 (D. Minn. 1993).  Only "where the evidence leaves no room for a reasonable

difference of opinion" may the court resolve the fact issues as a matter of law.  <u>Id.</u> at 675

(holding at summary judgment stage).  Fraudulent concealment only tolls the statute of

limitations "if it is the very existence of the facts which establish the cause of action which are

fraudulently concealed."  <u>Hydra-Mac</u>, 450 N.W.2d at 918 (holding on appeal after a jury trial).[6]

      Thus, in this case, Fredrikson's Motion to Dismiss may only be granted if the Amended

---

[5] "[I]n the absence of a fiduciary or confidential relationship, there must be something of an affirmative nature designed to prevent, and which does prevent, discovery of the cause of action."  <u>Wild</u>, 301 Minn. at 450 (quotation omitted); <u>Thunander v. Uponor, Inc.</u>, 887 F. Supp. 2d 850, 867 (D. Minn. 2012).

[6] Almost every case reviewed by the Court was procedurally in a summary judgment posture after the benefit of discovery.  Bringing a motion to dismiss based on statute of limitations argument is unusual.

Complaint contains <u>no</u> facts which may toll the statute of limitations.  Fredrikson argues JJH has

pled facts which make obvious the fraudulent concealment doctrine does <u>not</u> apply.  Defs.' Mem.

Supp. [Docket No. 27] 14-15.  Fredrikson argues JJH has pled facts which establish JJH was on

notice of its causes of action.[7]  <u>Id.</u>  As a result, Fredrikson concludes that these facts, which

occurred prior to December 2006, make the withholding of any document irrelevant because the

statutes of limitation for each of JJH's claims is six years.  <u>Id.</u>

    However, in the context of an ongoing attorney-client relationship, where there is a

fiduciary and confidentiality obligation, Fredrikson's conclusion is not so obvious.  <u>See</u> <u>Anoka</u>

<u>Orthopaedic Assocs., P.A. v. Mutschler</u>, 773 F. Supp. 158, 169 (D. Minn. 1991).  Here, the

important question is whether Fredrikson's concealment of the June 9, 2004 memorandum could

have led JJH to believe that its causes of action against Fredrikson did not exist.  <u>See</u> <u>Helleloid</u>,

149 F. Supp. 2d at 869.

    Significantly, this proceeding is at the motion to dismiss stage and there has been no

---

    [7] Fredrikson points to several examples of communications pled by JJH, which
Fredrikson argues should have put JJH on notice of its legal malpractice claim:

    (1)      an October 2004 phone call wherein Mr. Karau stated "inadvertence" or "attorney
            error" was not a defense to a fraudulently filed statement of use (Am. Compl. ¶
            31);
    (2)      a December 29, 2004 email from Fredrikson to JJH, stating "[w]e disagree with
            [JJH's] statement that his time and effort have been wasted 'as a result of
            Fredrikson's apparent errors/omissions'" (Ex. J);
    (3)      the draft Motion to Withdraw dated September 2005, stating that "[Plaintiff] has
            asserted certain claims and charges against [Fredrikson]" (Ex. L);
    (4)      on August 23, 2005, Fredrikson "sent a proposal in which in essence [JJH] was to
            release [Fredrikson] from any and all claims it may have against Fredrikson in
            exchange for [Fredrikson's] waiver of unpaid fees" among other things (Am.
            Compl. ¶ 39).

Defs.' Mem. Supp. at 14-15

formal discovery.  At this early stage, JJH has shown a plausible theory that could toll the statute

of limitations on all of its causes of action.  Even if the statutes of limitation began to run in

October 2004, when Fredrikson first allegedly communicated the possibility of its error,

Fredrikson may have tolled the running of the statutes of limitation when it withheld the June

2004 memo.  JJH has sufficiently pled that Fredrikson and JJH had an on-going attorney-client

relationship.  JJH has pled reliance on Fredrikson's representations.  It has further pled that

Fredrikson's incomplete disclosure of research and legal memoranda in November 2005 was a

fraudulent denial of material information.  JJH alleges Fredrikson claimed there was no defense

to the Statement of Use when in fact it knew of the June 2004 memo revealing a possible defense

of its Trademark.  Finally, JJH has pled that the effect of the concealment was to lead JJH to

believe that the cause of action did not exist and could not be discovered.  As a result, JJH has

pled the elements for equitable tolling and presented facts that may have tolled the statute of

limitations from November 2005, when the transition from Fredrikson to alternate counsel took

place.

In summary, at the motion to dismiss stage the facts must be taken in the light most

favorable to the non-moving party because the parties are operating without the benefit of

discovery.  Furthermore, a court may consider a statute of limitations argument at the motion to

dismiss stage only if it appears from the face of the complaint that the limitations period has run

and the complaint contains no facts to toll that running.  Without the benefit of discovery, taking

the facts in the light most favorable to JJH, and considering the well-pled facts that may toll the

statutes of limitation on each of JJH's claims, the motion to dismiss is denied.

**D.  Intentional Misrepresentation**

The elements of fraudulent misrepresentation under Minnesota law are: (1) a false representation about a past or present fact; (2) the representation was material and susceptible of knowledge; (3) the defendant made the representation knowing that it was false or without knowing whether it was true or false; (4) the defendant intended to induce the plaintiff to rely on the representation; (5) the plaintiff reasonably relied on the representation; and (6) the plaintiff suffered damages as a result.  Masephol v. Am. Tobacco Co., 974 F. Supp. 1245, 1250 (D. Minn. 1997) (citing M.H. v. Caritas Family Servs., 488 N.W.2d 282, 289 (Minn. 1992)); Martens v. Minn. Mining & Mfg. Co., 616 N.W.2d 732, 747 (Minn. 2000).  To state a claim for fraud, the plaintiff must allege the elements of fraud with particularity.  Cox v. Mortg. Elec. Registration Sys., Inc., 685 F.3d 663, 672-73 (8th Cir. 2012) (applying Minnesota law) (citation omitted).

Fredrikson argues JJH did not plead that it acted in reliance on any misrepresentation made by Fredrikson.  Defs.' Mem. Supp. 20-21.  Fredrikson also argues that JJH did not plead that it was damaged by the alleged misrepresentations.  Id. at 21.  Finally, Fredrikson claims that JJH did not plead fraud with sufficient particularity.  Id. at 21-22.

JJH has sufficiently pled reliance.  Am. Compl. ¶¶ 97-98.  Fredrikson argues in reference to the June 2004 memo, "the only document that Plaintiff alleges had not been provided to it was consistent with the advice Fredrikson had previously provided to Plaintiff . . . ."  Defs.' Mem. Supp. 21.  But, the consistency of the advice is a matter of dispute between the parties.  Am. Compl. ¶ 98.  JJH pled damages by the alleged misrepresentation, claiming that JJH would not have lost its Trademark if Fredrikson had represented JJH with the full extent of its legal knowledge.  Id.  As a result, JJH claims damages in excess of $75,000.  Id.  Finally, JJH pled

with particularity.  JJH filed a thirty-two page amended complaint that described the who, what, when where, and how of its causes of action.  <u>See generally</u> Am. Compl.  Therefore, JJH pled the necessary elements of intentional misrepresentation.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [Docket No. 25] is **DENIED**.


BY THE COURT:

s/Ann D. Montgomery

_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: July 12, 2013