UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| JJ Holand Ltd., | Court File No. 12cv03064 (ADM/TNL) |
| Plaintiff, | |
| | **ORDER** |
| vs. | |
| Fredrikson & Byron, P.A., Dean R. Karau, and David C. West, | |
| Defendants. | |

---

This matter is before the Court, Magistrate Judge Tony N. Leung, on Plaintiff JJ Holand Ltd.'s ("JJ Holand") Motion to Amend the Pretrial Scheduling Order (ECF No. 55) and Motion to Compel Documents Withheld on the Grounds of Privilege (ECF No. 62). The Court heard oral argument on the motions. Patrick O'Neill, Jr., represented JJ Holand, and Kevin Hickey represented Defendants.

## I.  BACKGROUND

In this legal malpractice action, JJ Holand has asserted claims for legal malpractice, breach of contract, and breach of fiduciary duty against Defendants Dean R. Karau, David C. West, and their law-firm employer Fredrikson & Byron, P.A., ("Fredrikson"), who represented JJ Holand regarding trademark issues for tobacco and tobacco related products. (*See generally*, Am. Compl., ECF No. 20.)[1] JJ Holand's claims against Defendants are premised largely on the allegation that Defendants provided

---

[1] The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota, carefully set forth a more complete summary of the underlying facts of the dispute in her July 12, 2013 Order denying Defendants' motion to dismiss. ECF No. 40.

negligent advice regarding obtaining the trademark at issue and litigating before the Trademark Trials and Appeals Board ("TTAB"), fraudulently concealed the facts giving rise to claims of breach of contract, breach of fiduciary duty, negligent misrepresentation and intentional misrepresentation, and sent an incomplete case file to JJ Holand's replacement counsel.

During discovery, Defendants produced a privilege log setting forth specific documents that Defendants claim are protected by the attorney-client privilege or as work product. JJ Holand moves to compel "documents and deposition answers withheld per an 'intra-firm attorney-client privilege,' document and deposition answers concerning [Defendant Fredrikson Byron, P.A.'s] ("Fredrikson") self-reporting of malpractice to its malpractice carrier, and documents and deposition answers concerning two [Fredrikson] e-mails referring to an undisclosed conflict within the Firm involving the representation of cigarette manufacturers such as [JJ Holand]." (Pl.'s Mem. at 1-2.) Specifically, JJ Holand requests the Court undertake an *in camera* review of documents at log entries 1-4, 7-9, 12-18, 49-52, 57, 60-65, 70-71, 89, 96, and 119-127 on Fredrikson's privilege log. (*See* Lundquist Decl. Ex. A, ECF No. 76.) JJ Holand also moves to amend the Pretrial Scheduling Order to add a claim for punitive damages and to extend the deadlines governing expert witness disclosures and written reports.

Defendants move to exclude JJ Holand's expert Geofrey C. Hazard, arguing that his opinion was not timely disclosed under the Court's Pretrial Scheduling Order. (ECF No. 82.)

## II.  ANALYSIS

### A.  Motion to Compel

#### 1.  Legal Standard

Federal Rule of Civil Procedure 26(b)(1) allows a party "to obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  *Id.*  As a result, "[r]elevancy, in the discovery context, is extremely broad." *Mead Corp. v. Riverwood Natural Res. Corp.*, 145 F.R.D. 512, 522 (D. Minn. 1992).  Nonetheless, some threshold showing is necessary "before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case."  *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992); *see Bredemus v. Int'l Paper Co.*, 252 F.R.D. 529, 532 (D. Minn. 2008) (stating "relevancy under Rule 26 is not without bounds").  This Court "has considerable discretion in granting or denying discovery requests," *id.* at 534, and will not allow parties to "roam in the shadow zones of relevancy to explore matter which does not presently appear germane on the theory that it might conceivably become so." *Carlson Cos., Inc. v. Sperry & Hutchinson Co.*, 374 F. Supp. 1080, 1089 (D. Minn. 1974).

In cases where federal jurisdiction relies on diversity, federal law applies to resolve work product claims and state law applies to resolve claims of attorney-

client privilege. *Baker v. Gen Motors Corp.*, 209 F.3d 1051, 1053 (8th Cir. 2000). Under Minnesota law,

> [a]n attorney cannot, without the consent of the attorney's client, be examined as to any communication made by the client to the attorney or the attorney's advice given thereon in the course of professional duty; nor can any employee of the attorney be examined as to the communication or advice, without the client's consent.

Minn. Stat. § 595.02(b). "The purpose of the privilege is to encourage the client to confide openly and fully in his attorney without fear that the communications will be divulged and to enable the attorney to act more effectively on behalf of his client." *Kobluk v. Univ. of Minn.*, 574 N.W.2d 436, 440 (Minn. 1998) (quoting *Nat'l Treasure Corp. v. Hymes*, 282 N.W.2d 890, 896 (Minn. 1979)).

The "threshold matter" is "whether the contested document embodies a communication in which legal advice is sought or rendered." *Id.* at 444. The party asserting the privilege must establish a factual basis for the privilege or protection. *Hollins v. Powell*, 773 F.2d 191, 196 (8th Cir. 1985). Where in-house counsel acts as a legal advisor for the corporation, "'in-house' counsel are entitled to the same privilege as private counsel . . . ." *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1332 (8th Cir. 1986); *see also In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2009 WL 1178588, at *2 (D. Minn. May 1, 2009).

Documents prepared in anticipation of litigation are protected from discovery by the work product doctrine. *PepsiCo, Inc. v. Baird, Kurtz & Dobson LLP*, 305 F.3d 813, 817 (8th Cir. 2002). This protection is broader than the attorney client

privilege and applies to "documents, and other tangible objects, that were prepared in anticipation of litigation either by or for another party, or by or for that party's representative." *Onwuka v. Fed. Express Corp.*, 178 F.R.D. 508, 512 (D. Minn. 1997). Such documents are discoverable only if "the party seeking discovery has a substantial need for the materials and cannot obtain the substantial equivalent through other means." *PepsiCo*, 305 F.3d at 817 (citing Fed. R. Civ. P. 26(b)(3)).

### 2. Communications With In-House Counsel and the In-Firm Attorney-Client Privilege

The issue of whether communications between attorneys and in-firm counsel related to a potential malpractice claim by a current client are protected by attorney-client privilege is an issue of first impression in this district. Some courts addressing this issue have determined that the privilege does not attach in these cases. *See, e.g.*, *E-Pass Tech., Inc. v. Moses & Singer, LLP*, No. C09-5967 ECM (JSC), 2011 WL 3794889, at *3-4 (N.D. Cal. Aug. 26, 2011) ("If [the law firm defendant] intended to separately—and confidentiality [sic]—represent itself on the fees motion it had a duty to disclose this conflict and obtain [the plaintiff's] consent to continued representation. Because it failed to do so, it cannot claim that internal communications discussing or implicating such a conflict are privileged."); *Koen Book Distribs. v. Powell, Trachtman, Logan, Carrle, Bowman & Lombardo, P.C.*, 212 F.R.D. 283, 285-86 (E.D. Pa. 2002) (determining that no attorney-client privilege attached to intra-firm communications about potential legal action by a current client against the firm). Other courts have reached the opposite conclusion.

*See, e.g.*, *Gervy v. Seyfarth Shaw LLP*, 966 N.E.2d 523, 538-39 (Ill. App. Ct. 2012) ("Even if we were to conclude that [the law firm] representing itself is similar to the representation of an external client, the representation did not involve a common interest with [the client]. Thus, the dual-representation doctrine is not applicable here and the attorney-client privilege applies to communications with [the firm's] in-house counsel regarding [the client's] malpractice claims."); *TattleTale Alarm Sys., Inc. v. Calfee, Halter & Griswold, LLP*, No. 2:10-cv-226, 2011 WL 382627, at *5 (S.D. Ohio Feb. 3, 2011) ("[T]here are societal values to be served by allowing members of a law firm to converse openly and freely about potential mis-steps in their representation of a client without worrying about whether the client will eventually be able to use those communications to the lawyer's disadvantage.").

Two[2] state supreme courts have addressed the applicability of the attorney-client privilege to a law firm's in-house communications concerning a current client. The Massachusetts Supreme Court—the first court of last resort in the nation to address the issue—held that attorney-client privilege applies to "communications between law firm attorneys and a law firm's in-house counsel concerning a malpractice claim asserted by a current client of the firm." *RFF Family P'ship, LP v. Burns & Levinson, LLP*, 991 N.E.2d 1066, 1067 (Mass. 2013) ("*RFF Family*"). The Georgia Supreme Court agreed in *St. Simons Waterfront, LLC. V. Hunter,*

---

[2] This Court took JJ Holand's Motion to Compel under advisement before the Supreme Court of Oregon issued its opinion in *Crimson Trace Corp. v. Davis Write Tremaine, LLP*, --- P. 3d ---, 2014 WL 2457574 (Ore. May 30, 2014). Accordingly, the Court does not consider the *Crimson Trace* opinion in its analysis of the issues at hand.

*Maclean, Exley & Dunn, P.C.* ("*SSW*"), holding: (1) "the same basic analysis that is conducted to assess privilege and work product in every other variation of the attorney-client relationship should also be applied to the law firm in-house counsel situation"; and (2) because the Georgia Rules of Professional Conduct do not control the applicability of the attorney-client privilege or work product doctrine, "the conflict of interest that may arise between the firm and the client when the firm begins acting in its own defense does not affect the protections afforded to privileged communications and attorney work product." 746 S.E.2d 98, 102 (Ga. 2013). Like the *RFF Family* court, the *SSW* court rejected the argument that the state's Rules of Professional Conduct might create an exception to the privilege and determined that "the best course is simply to analyze the privilege issue [as the court] would in any other lawsuit in which the privilege is asserted." *Id.* at 104.

To date, only one case in Minnesota has addressed whether communications between attorneys and in-firm counsel related to a potential malpractice claim by a current client are protected by the attorney-client privilege: *Coloplast A/S v. Spell Pless Sauro, PC*, No. 27-CV-12-12601, 2013 Minn. Dist. LEXIS 45 (Minn. Dist. Ct. Nov. 22, 2013). In that case, Coloplast sought discovery of an internal email exchange reflecting and containing communications with the attorney defendants ("Lindquist Defendants") and their firm's general counsel. *Id.* at \*13. Coloplast argued, much like JJ Holand does here, that when the Lindquist Defendants sought advice from in-house counsel while still representing Coloplast, they created a conflict of interest that defeated whatever attorney-client privilege would otherwise

7

attach to communications between a business entity and in-house counsel. *Id.* The court found the reasoning of *RFF Family* and *SSW* "highly persuasive," particularly the logic that "recognition of the privilege 'will often benefit the client and will likely result in increased law firm compliance with ethical obligations.'" *Id.* at *16 (quoting *RFF Family*, 991 N.E.2d at 1080). The *Coloplast* court adopted the *RFF Family* four-part test to determine whether intra-firm communications are protected from discovery by the attorney-client privilege:

1) "First, the law firm must designate, either formally or informally, an attorney or attorneys within the firm to represent the firm as in-house or ethics counsel, so that there is an attorney-client relationship between in-house counsel and the firm when the consultation occurs."
2) "Second, where a current outside client has threatened litigation against the law firm, the in-house counsel must not have performed any work on the particular client matter at issue or a substantially related matter."
3) "Third, the time spent by the attorneys in these communications with in-house counsel may not be billed or charged to any outside client. Because the law firm is the client with respect to such communications, their cost must be borne by the law firm."
4) "Fourth, as with all attorney-client communications, they must be made in confidence and kept confidential."

*Id.* at *15-16 (quoting *RFF Family*, 991 N.E.2d at 1080). Given the sound reasoning in *RFF Family*, *SSW*, and *Coloplast*, this Court will follow suit.

JJ Holand argues that Defendants' ethical obligations override any claim of privilege over communications between the Defendant Attorneys and Fredrikson in-house counsel. In essence, JJ Holand's position is that because Defendants were aware of a potential malpractice claim in which JJ Holand and Defendants would have conflicting interests, Defendants' failure to obtain JJ Holand's informed

consent to continue representing JJ Holand before the TTAB overrides any privilege in Defendants' internal communications. This Court disagrees.

In Minnesota, as in every other state, lawyers have a duty of loyalty to their clients and an obligation not to represent a client whose interests are adverse to the lawyers' own without the client's informed consent. Minn. R. Prof. Conduct 1.7. It is not always clear, however, when the interests of the lawyer and the client have become so adverse that withdrawal from representation is necessary. The fact that a lawyer might solicit ethical advice from another lawyer—one better schooled in the professional rules (and likely more capable of dispassionately analyzing the problem at hand)—does not necessarily place the lawyer's interests adverse to the client's, and could well work to the client's benefit. *See RFF Family*, 991 N.E.2d at 1073.

The communications at issue in the present motion are: (1) communications between Fredrikson Attorneys and in-firm counsel concerning a potential malpractice insurance claim (Lundquist Decl. Ex. A (ECF No. 72), Privilege Log Nos. 1-4, 89); (2) documents sent and received by in-firm counsel concerning Fredrikson's decision whether to withdraw from representing JJ Holand (Privilege Log Nos. 7-8, 12-18, 49-51, 120, and 127); and (3) communications between attorneys and in-firm counsel concerning JJ Holand's settlement proposals and demands (Privilege Log Nos. 9, 52, 57, 60-65, 70-71, and 96). The documents in each of these three categories, however, all satisfy the *RFF Family/Coloplast* test.

First, the communications with in-firm counsel are between Defendants Karau and West and two Fredrikson attorneys who serve as firm in-house counsel—Bertram Greener and John Lundquist. (Lundquist Decl. ¶ 1 (ECF No. 72).) Further, neither Greener nor Lundquist performed legal services for JJ Holand or any substantially related matter, (*id.* ¶ 3), and neither billed JJ Holand or any other client for the time they spent advising Defendants Karau and West. (*Id.*) Finally, all of the communications at issue were made in confidence and kept confidential. (*Id.*) Although some Fredrikson attorneys other than Greener, Lundquist, Defendant Karau and Defendant West had access to the documents and communications at issue, this fact does not defeat Defendants' claim of privilege. *See SSW*, 746 S.E.2d at 107.[3] The requested communications meet the criteria to be privileged as attorney-client communications. Accordingly, the Court determines that these communications are protected from disclosure by the attorney-client privilege.

JJ Holand argues that the requested communications are not privileged because Defendants "took steps to conceal facts giving rise to a malpractice action by selectively communicating with [JJ Holand] under the guise of keeping [JJ Holand] fully informed as to its chances" of succeeding in its case before the TTAB. (Pl.'s Mem. at 26.) In essence, JJ Holand takes the position that a concurrent conflict of interest existed between it and Defendants when the alleged malpractice occurred, and because Defendants failed

---

[3] The reality of modern legal practice is that law firms have tended to increase in size, complexity, and even geographical coverage. Commensurate with that increase is the need for better management, whether through a single potentate or a management group. Subject to the other requirements of the *RFF Family/Coloplast* test, disclosure to a managing partner or group head, for example, should not automatically extinguish the confidential nature of such communications.

to disclose this conflict and obtain JJ Holand's informed consent to continue representing it while conferring with in-house ethics counsel, all communications between Defendants and their in-house counsel are not privileged.

For the reasons set forth in *RFF* and *Coloplast*, this Court again disagrees. It is worth remembering that the purpose of the attorney-client privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). An interpretation that would deny a law firm and its attorneys the protections of the attorney-client privilege unless the law firm first withdrew from the representation or obtained the consent of the client might well work against the best interests of both the client and the law firm. The law firm would be unable to obtain advice as to how best to represent its client and avoid committing malpractice while such representation continued. The client would be saddled with counsel that is forbidden from learning how better to represent its clients until after the client's representation has concluded. Indeed, "the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn*, 449 U.S. at 390. As such, the Court agrees with the interpretation of the *RFF Family* and *Coloplast* courts, and applying that test to the instant scenario, the requested communications are protected from disclosure by the attorney-client privilege.

With respect to the requested documents that were sent and received by in-firm counsel concerning Fredrikson's decision whether to withdraw from representing JJ Holand (Privilege Log Nos. 7-8, 12-18, 49-51, 120, and 127), the Court determines that such documents are privileged under the work product doctrine. These documents were made after JJ Holand accused Defendants of negligence and demanded settlement payment in exchange for waiving any malpractice claims. (*See* Lundquist Decl. ¶ 4.) These documents were prepared in anticipation of litigation, and JJ Holand has made no showing of substantial need for these materials. As such, the work product doctrine prevents their disclosure.

As the *RFF Family* court stated:

> In law, as in architecture, form should follow function, and we prefer a formulation of the attorney-client privilege that encourages attorneys faced with the threat of legal action by a client to seek the legal advice of in-house ethics counsel before deciding whether they must withdraw from the representation to one that would encourage attorneys to withdraw or disclose a poorly understood potential conflict before seeking such advice.

991 N.E.2d at 1080. In light of the persuasive reasoning of the Massachusetts and Georgia Supreme Courts and the guidance of the only Minnesota court to address the issue, this Court determines that the requested communications with, sent or received by in-house ethics counsel (Privilege Log Nos. 1-4, 7-9, 12-18, 49-52, 57, 60-65, 70-71, 89, 96, 120, and 127) are protected by the attorney-client privilege.

### 3.  Communications With Malpractice Insurer

JJ Holand also seeks to compel communications between Defendants and their malpractice insurance carrier, the Hartford. (*See* Privilege Log Nos. 1, 121-126.) It argues

that these communications were for the purpose of seeking insurance coverage rather than legal advice, and therefore they are not privileged. Defendants argue that the communications are privileged as between an insured and the insurance company.

In *State v. Anderson*, the Minnesota Supreme Court determined that communications between an insured and his insurer can be privileged so long as the insured "establishes that his admissions were intended to be privileged." 78 N.W.2d 320, 326 (Minn. 1956). There, the defendant made statements to his insurance agent regarding an automobile accident. *Id.* at 323. The Court held that Anderson did not produce any evidence to satisfy his burden that the privilege protected his statements from disclosure—nothing in the record showed that Anderson spoke to his insurance agent in confidence or that the purpose of his statements to his insurance agent were "for exclusive use in preparation of the defense of any suit which might be brought against him as a result of the action." *Id.* at 326. Although Anderson failed to make a sufficient showing that the privilege applied in his case, the Minnesota Supreme Court recognized the privilege's potential application in such a scenario.

Here, the Court determines that the communications identified as Privilege Log document numbers 1 and 121-126 are privileged. Defendants' log shows that Privilege Log document number 1 is a communications between Defendant West and in-firm ethics counsel Greener addressing insurance coverage issues.[4] Privilege Log document numbers 122 and 125 are both communications between in-firm ethics counsel at Fredrikson and

---

[4] The Court also notes that this communication and its attachments are privileged under the in-house attorney-client privilege as set forth above.

Defendants' malpractice insurer addressing insurance coverage issues related to a potential malpractice claim. Privilege Log document numbers 123 and 126 are correspondences and attachments from in-firm ethics counsel at Fredrikson to the firm's malpractice insurer addressing "withdrawal of representation and insurance coverage issues." Based on the information in the Privilege log, Defendants have successfully shown that these five documents—Privilege Log document numbers 1, 122, 123, 125, and 126—were communications to their malpractice insurance agent made in confidence for exclusive use in preparation of the defense of any suit which might arise from their representation of JJ Holand.

Privilege Log document number 121 is a communication between Fredrikson's outside insurance agent and an employee at Defendants' insurer attaching Fredrikson's October 28, 2004 "Claim Circumstances" form. This form put Fredrikson's malpractice insurer on notice of a potential malpractice claim. JJ Holand argues that this communication is not privileged because both the sender and recipient are non-lawyers, and it was created in the ordinary course of business. The Claim Circumstances form, however, is a confidential communication from Defendants' insurance agent made to the insurer for exclusive use in preparation of the defense of a potential lawsuit resulting from the conduct for which Defendants are insured. *See id.* Moreover, it can hardly be disputed that Defendants' assessment of the circumstances underlying a potential malpractice claim constitutes their "mental impressions, conclusions, opinions or other legal theories." Fed. R. Civ. P. 26(b)(3). As such, Privilege Log document number 121 is protected by the work product doctrine. Privilege Log document number 124 is protected

from discovery for the same reason. Based on the information set forth in the Privilege Log, Defendants represent the documents contained in document numbers 121 and 124 are documents Defendants provided their malpractice insurer concerning JJ Holand's potential malpractice claim. Accordingly, they are protected by the work-product doctrine.

JJ Holand argues that Privilege Log document numbers 121 and 124 should be produced because disclosure of the underlying facts by those who communicated with the attorney is not protected by either the attorney-client privilege or the work product doctrine. "The essential element of each case [in which the work product doctrine applies] is that the attorney was preparing for or anticipating some sort of adversarial proceeding involving his or her client." *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir.), *cert. denied*, 484 U.S. 917 (1987). Here, in-firm ethics counsel at Fredrikson prepared both documents in question after receiving a letter from JJ Holand relating its "alarm," "surprise[]," and "disappoint[ment]" resulting from Fredrikson's recent assessment that it would not likely succeed before the TTAB. (*See* O'Neill Aff. Ex. E at 16.) Indeed, in light of JJ Holand's letter, it was reasonable for Defendants to view future litigation over their representation of JJ Holand as more than a remote possibility. *Zenith Radio Corp. v. Radio Corp. of Am.*, 121 F. Supp. 792, 795 (D. Del. 1954). Moreover, Defendants represent that the documents listed as privilege log number 124 have all been separately produced to JJ Holand in discovery in this matter. Even though the documents themselves have been produced, requiring Defendants to reveal which documents they selected to provide their insurer would reveal their mental impressions

concerning the litigation. *Shelton*, 805 F.2d at 1329. JJ Holand has not shown that it cannot obtain the substantial equivalent of the information contained in these materials; indeed, much of the information contained in the log entries has been produced in response to other document requests.

Based on the foregoing, the Court determines that the Privilege Log provides sufficient information from which to conclude that log entries 1-4, 7-9, 12-18, 49-52, 57, 60-65, 70-71, 89, 96, and 119-127 are protected by either the attorney-client privilege or the work product doctrine as set forth above. Accordingly, the Court determines that an *in camera* review is unnecessary, and JJ Holand's motion to compel documents withheld on the grounds of privilege will be denied.[5]

### B. Motions to Amend the Pretrial Scheduling Order

JJ Holand has also filed two motions to amend the pretrial scheduling order. In the first, JJ Holand seeks leave to amend the deadline to add a claim for punitive damages and the deadlines for expert disclosures and written reports. (See ECF No. 57.) In the second, JJ Holand seeks to amend the deadlines for expert depositions, non-dispositive motions for both fact discovery and expert discovery, and dispositive motions. (See ECF No. 81.) In light of the Court's above determination regarding the scope of Defendants' privilege claims and the effect this determination has on the documents that the parties' experts will have at their disposal, the Court determines that good cause exists to grant

---

[5] To the extent JJ Holand requests other emails referring to an undisclosed conflict with a different Fredrikson client, Defendants represent that those emails have been produced with the name of the client redacted. (Defs.' Mem. (ECF No. 71) at 21-22.)  As such, the Court determines that JJ Holand's motion is moot with respect to that issue.

the Motions. An Amended Pretrial Scheduling Order shall issue contemporaneously with this order setting forth the deadlines that will control this litigation going forward.

### C. Defendants' Motion to Exclude Expert Testimony

Defendants have also moved to exclude expert testimony, arguing that JJ Holand did not meet the expert disclosure deadlines set forth in the controlling pretrial scheduling order. Because the Court will be issuing an Amended Pretrial Scheduling Order setting forth new expert disclosure deadlines, Defendants' Motion (ECF No. 82) will be denied as moot.

## III. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1. JJ Holand's Motion to Compel Documents Withheld on the Grounds of Privilege (ECF No. 62) is **DENIED;**

2. JJ Holand's Motions to Amend the Pretrial Scheduling Order (ECF Nos. 55, 79) are **GRANTED**, and an Amended Pretrial Scheduling Order shall be filed contemporaneously with this Order;

3. Defendants' Motion to Exclude Expert Testimony (ECF No. 82) is **DENIED AS MOOT**,

4. All prior consistent orders remain in full force and effect.

5. Failure to comply with any provision of this Order or any other prior consistent Order shall subject the non-complying party, non-complying counsel, and/or the party such counsel represents to any and all appropriate remedies, sanctions, and the like, including without limitation: assessment of costs, fines and attorneys' fees and disbursements; waiver of rights to object, exclusion or limitation of witnesses, testimony, exhibits and other evidence; striking of pleadings; complete or partial dismissal with

prejudice; entry of whole or partial default judgment; and/or any other relief that the Court may from time to time deem appropriate.

Date:  July 17, 2014                         s/ Tony N. Leung
                                             Tony N. Leung
                                             United States Magistrate Judge
                                             District of Minnesota

                                             *JJ Holand, Ltd. v. Fredrikson & Byron, P.A., et al.*
                                             File No. 12-cv-3064 (ADM/TNL)